Good morning. May it please the court. I'm Christy Martin on behalf of Cedric Rose. Your Honors, in this appeal, the government has argued initially that there is no jurisdiction. That is, that in 2008, the sentencing court did not, more likely than not, rely on the courts. I want to put out that since the filing of Mr. Rose's 2016 motion, none of the government's pleading have argued previously against jurisdiction, and we have no findings from the magistrate or the district court on jurisdiction. Now, this court, of course, has to assure itself of jurisdiction to proceed, and I would argue that the court can readily make a jurisdictional finding based on the state of the law at the time, in 2008, and also based on the record that we have before us. Do any of our prior authorizations sort of implicitly assume the court has jurisdiction? Do you see what I mean? This is the third time, which is dogging in good of you because Johnson Welch had been changing the landscape, but does your argument, the one that you're elaborating and I interrupted you on, were you going to say there's some law of the case, truth, that we've already implicitly determined that it's likely one of the six, or one of the six was relied on that has a Johnson Welch problem? Well, Your Honor, I would love to argue that implicitly and repeatedly authorizing the court has made that sort of statement, but I do have to recognize that it's a prima facie standard at that level. Really, what I'm relying on here is, I would say more so than often, we have Sante Esteban Hernandez, which was very clear about the Texas robbery statute, and then a year later, in the ACCA context, we have Davis, which says Texas robbery is a violent felony under the residual clause, and this makes absolute sense because if we go back to that time, there were arguments about divisibility, there were arguments about the meaning of use, the meaning of force, and as the government had to recognize in its brief, and this court recognized in the Bryant case, courts often would default to the residual clause because a force clause argument was going to mean a lot of writing, a lot of research, and a lot of decisions to be made. Would you resolve the jurisdictional issue if we're not going to look at the sexual assault? Well, you absolutely can. I think it's incumbent upon the court to resolve the jurisdictional issue. Right, but if there's no jurisdictional issue, if we just were to say, 1984, simple robbery by threat, one of the aggravated robberies by threat, and the burglary are all satisfactory predicates, and then we don't have to get into any of the jurisdictional issues about the sexual assault by threat, and we don't have to get into whether or not there's Garrett and Floyd, we don't have to do any of that because there are three other convictions just sitting there waiting on the face of the record. That's not a friendly question, and I'm sorry about that. No, no, that's a good question. It's an important question because why would we do all of these gymnastics to figure out these complicated ones when there are three easy ones sitting right there on the record? It's a very important question. I agree with you. Your Honor, first of all, neither the magistrate nor the district court below ever addressed the merits of Mr. Rose's motion. Right, but we can say that it's not necessary, that this whole thing is not, this is just an interesting legal discussion. You could do that, but I would suggest this court has a long history and a lot of precedent saying that it is not appropriate for the court, for this court, to make such findings of facts and conclusions of the law in the first place. We agree that the simple robbery by threat is a good one to count, right? 1984, simple robbery by threat, there's no reason we can't consider that one. Here's my response to that, Your Honor. As we know, the court has to apply case law as it stands at the time, as it stands today when we get to the merits. Since the time of briefing in this case, we have the Erlanger case that has come down. We don't know how Erlanger, first of all, we don't know how Erlanger is going to play out in cases like this, cases where we're looking back retrospectively. The district court has not had a chance to visit that. We also, as the court's aware, I have asked that we wait for the Floyd opinion. We're hoping that the Texas Court of Criminal Appeals is going to give us a decision that would change the way we look at robbery. Let's say we applied Garrett, I mean, we're now in the world, we're talking about harmlessness, right? That's what we're doing. If we move to the merits, yes. If we applied Garrett and Jackson, our existing law, but let's say then Floyd turns out the way you predict it will, at that point, your client's in for life on account that he isn't challenging, right? Am I right or wrong? Well, we have challenged it. The 35-59 challenge. We have not succeeded in reaching this point on that, the three strikes end. So I guess let's imagine that we, in the first instance, did say there was harmlessness given existing Fifth Circuit law, fully aware that the TCCA will tell us what Texas's robbery by threat statutes equate to. What then would he have to do? In other words, if you don't prevail now, but then Floyd comes out the way you predicted, what would happen to him? Your Honor, I think it would be a miscarriage. I think Mr. Rose, we're at a very precarious point right now. This is our Johnson 2255. Floyd is not going to bring us back in a second or successive petition. And that is why I can't emphasize enough how important it is that we're sure about the state of the law before this court, or as I suggest, before a district court gets into the merit . . . One thing I did admire about both briefs in this case is it seemed like you were both doing your best to tell us which ones do and don't count. And so would you mind just doing that? Am I right there are six possible convictions? Certainly.  So . . . And so then, burglary does qualify? Correct. Disputing. Disputing. Aggravated robberies don't under existing law? Aggravated robberies do under existing . . . Do. I'm sorry, under Borden, right? They do. Yes. So he has one of those. Yes. Oh, wait. Are you agreeing to that? Now I'm getting . . . Let me . . . So we have a new predicate that has not been addressed by the district court, which is the 1984 simple robbery conviction that the government raised on appeal. Right. We have that, and we have a 1985 robbery conviction, and we have a burglary. Now as a basic premise, I have to accept that under current case law, those qualify. What I don't accept is that under current case law, there is not an Erlanger argument that those would not have occurred on different occasions . . . that those would have occurred on different occasions. Oh, I see what the Erlanger . . . So what I'm saying is the reason that I believe that this court should not engage in the merits and remand it to the district court for findings is because I think there are a lot more questions than we're recognizing just by looking on paper at the list of predicates. If I didn't see forfeiture as to any of them, the one they want me . . . both sides have suggested there are forfeiture issues. Can you describe to me the orbit of predicates that both of you agree do count unequivocally if there's no forfeiture issue? At the risk of driving you crazy, putting the Erlanger issue . . . Yes, put the Erlanger. Okay. Thank you. We do . . . I think we are in agreement that under current law, robbery and burglary are valid predicates under the ACCA. We are in agreement that aggravated robbery by injury, which would be the two 1991 predicates, do not qualify under the ACCA. And we are in agreement that the aggravated sexual assault does not qualify under the  Okay. So burglary, everyone agrees, and then how many robberies does he have? The robbery by threat. I should have . . . No, not the . . . Well, the robbery by threat. You're saying you're being professional in acknowledging under Fifth Circuit law those do count.  Yeah. So . . . You moved to hold this in abeyance for Floyd. Correct. And you've pressed that again. Did the government oppose at either the motion stage or in the brief the notion that we should hold for Floyd? Yes, it did, Your Honor. But it did in writing or just indicate that it was in opposition? I can ask them. I know they indicated it was in opposition. I don't recall a response. Yeah. I don't either. Okay. But we don't even have to get to that issue about the holding for the Floyd, though. If you look at the other ones that you just said, if we don't have an Erlinger issue . . . If we don't have an Erlinger issue. If there's no . . . Okay. We don't even have to deal with whether Garrett should be weighted on. We don't . . . And there's another aggravated robbery by threat, and then there's the burglary. So there's three right there. And Your Honor, if we look at those dates, the reason that I'm hesitating, and if we look at those dates, they are back-to-back convictions. So it would be incumbent on a trier of fact if this were to go to trial now to determine if those offenses were committed on separate occasions. And as I said, we don't know how that's going to apply in cases that come back to the district court at this point, but there is a question about a lack of charging, a lack of jury finding on the separate occasions issue. And this is really why I believe that the merits question should be remanded to give the magistrate judge a chance to look at this, to give the district court a chance to rule on that, given the tradition that this court is a court of review rather than first view. But we don't . . . We just need to look at the record. No, Your Honor, I don't think we can. I don't think we can because Erlanger tells us that there's more to it than merely the fact of a prior conviction now. We now know that there is a constitutional right to have a jury find that these offenses were committed on separate occasions, and if we look at the convictions . . . If these were five years apart, I would not be making this argument to Your Honor, but if we look at the convictions, they are back-to-back, those first three convictions, the 84, 85, and 85 burglary. Okay. So if we . . . But if we . . . Does that apply only if I use the 1984 one? Because if we just . . . If we use the Garrett one and say we're not going to wait on Floyd, that we already have an opinion since 2022, it's good law in the circuit, we're going to move on until the Garrett, then you don't have that problem because you have the other burglary and the other robbery. We have one burglary and one robbery if we take the 84 conviction out, which would not be sufficient. Ms. Barton, you may have answered this earlier, but I'm not sure. What would be your position on whether this court should defer action and wait for the Texas Supreme Court . . . Oh, Your Honor, we did . . . . . . to decide this issue? We would certainly like to wait for the Texas Court of Criminal Appeals. We did file a motion asking that the case be stayed. We certainly would ask again that the case be stayed unless the case is remanded because as Judge Higginson alluded to, once this case is . . . once this appeal is decided, it could close the door if Floyd has not come down yet. Why would we do that? We don't usually stay things pending the Supreme Court or even the Supreme Court. If we have a case law that is on point and we have a 2022 case that's on point, we follow that case law until we learn that that's wrong. I think the best answer to that, and I would say there is a long history of cases being stayed pending decisions that we know are coming down. Well, it's discretionary, but our general policy is that we don't wait. We go, we proceed. There's nothing . . . our 2022 case is good. We don't have any idea when the Court of Criminal Appeals is going to rule. It's been sitting there a long time. That's not a criticism of the Court of Criminal Appeals. They have lots of important matters. It's not like you're saying, wait two months and the cert term will end and we can all know the answer. There's nothing like that. There's no guarantee that it will even be done in the next year or two. Your Honor, I think my response to that is the court certainly wants to get this precedent correct. If we look at Garrett, we see that Garrett had to go into Texas case law and do an analysis. The cases were all over the place and I believe the court ultimately came down on a case called Landrian to decide the divisibility issue. So given that Garrett is so heavily dependent on Texas precedent . . . Is Garrett critical for you to win? If Garrett proves to be wrong according to Texas authority that we would never disavow, is he not a properly ACCA sentence? He is not, Your Honor. So the government . . . for us to decide this now, we better be absolutely rock sure that Floyd comes out against your position. That is absolutely correct. Is that really correct? But if I could just ask, I think I know Ehrlinger, but I'm confessing I hadn't really applied it to this case. When I quickly peek at the table of authorities, I don't see either party telling me I should have applied it. So am I wrong? Where is Ehrlinger? Where was it briefed for us to assess this situation? Your Honor, unfortunately it was not. The briefing was complete in this case, and I did not file a 28-point . . . I know. So that's why I was sort of lost. So is Ehrlinger essential to there not being three qualifying predicates, yes or no? Let's assume Floyd turns out the way you hope it does or think it should. Is Ehrlinger still essential? No, it isn't. So why are you bringing . . . why . . . I mean, you're . . . okay. You see my . . . a lot of this argument is about the importance of Ehrlinger and a remand for Ehrlinger. I had not approached this case with that, and now I'm not seeing either party saying it's relevant. To me, this did reduce, but I sometimes oversimplify things, this reduced to whether we want to jump ahead of Texas because we have published controlling law or not. That's what I thought this case came down to. Your Honor, Floyd is the case that we've been waiting for. Ehrlinger came out in the interim. The government has introduced a new predicate, so it could raise issues if the court were to go to the merits, but Floyd . . . if Floyd comes out the way that we hope it will, then no, there would be no ACCA enhancement in this case. Okay. Thank you. Okay. You answered to Judge Higginson that . . . in answer to a question about we better be absolutely correct that Texas would go the way of our opinion to not wait. That's not . . . and you said, yes, that's true. We must wait because if we're not absolutely correct, some sky is falling thing. We have a binding precedent, and we have a rule of orderliness that says we're supposed to follow our binding precedent until a court changes it. So we have already made a determination that we're correct under our eerie guess. So we are not at the crossroads of, oh, my goodness, should we eerie guess? Should we certify? Should we do . . . we're not at that place. We already have an eerie guess and a published opinion. So we are not . . . we don't have to be absolutely sure. We just have to follow our precedent. You're absolutely right about what the precedent says. What I'm saying is the foundation of that precedent is in question, and I think that . . . I don't think this court would hesitate to revisit it if the premise of that case were reversed, and I think the court wants to have that correct, otherwise it's an issue that will keep coming . . . I mean, eventually it would have to get addressed. If Texas law reverses . . . In this case or another? In this case or another. Absolutely. There's nothing that would prevent that from being resolved in this case or another if it was reversed? No, that's absolutely correct, but on behalf of . . . And there's been a whole series of appeals and things in this, and they have really good lawyers, so there's no doubt that this would be addressed at some later date if we were wrong. I'm sure it would come up on behalf and as a Mr. Rose's advocate. That was a compliment. I appreciate it. I do want to get his sentence correct. I appreciate the court's questions. Thank you. We have your argument. You just have time for rebuttal. Ms. Mitchell? Good morning. Do we have to address the jurisdictional question if we totally ignore the sexual assault? There are circumstances where the court can pre-termit the jurisdictional determination. We're not even going to deal with that claim and whether it was proper. Absolutely. I mean, he has three valid ACCA predicates under current law, under this court's binding precedent. He qualifies under ACCA. That is a simple way to resolve it, but would the government not then oppose a fourth successive petition if Texas said, oh, the predicate for your body of law is wrong? So do you understand my question? If we went ahead, even though he's in jail for life, so we've got plenty of time, we went ahead and said, right now we're going to issue according to our law, and then it turns out that it isn't a valid predicate according to Texas, would the government oppose a fourth successive petition as to Mr. Rose alone to make sure some . . . you understand my question? Yes. I understand your question. In order for there to be a successive motion, there has to be a decision by the Supreme Court. Right. So we would have to go from Floyd to a case from this court to the Supreme Court, and then it would have to be retroactive on collateral reviews. That would mean Floyd is stuck, he's got no relief, even though everyone agrees legally he doesn't have three valid predicates. I guess I didn't understand that question. I'm asking you to assume a series of hypotheticals. Because our law is what it is, and you correctly said it would have to be the Supreme Court saying it, but if Floyd, one day after we hurry to issue this opinion pursuant to Garrett, if the Texas Supreme Court said, actually, robbery by threat is divisible, what relief does Rose get? Or do we just say, well, the next defendant, who's improperly sentenced, he does, but poor Mr. Rose. That would be a circumstance where the Texas CCA says it's not divisible. Yes. Okay. Or you have to have jury unanimity between the two different subsections.  Obviously, it's within the court's discretion to wait on Floyd if the court decides to do that. That's why I was asking, and I don't remember, but you'll remember, did you actually in writing oppose, or did you just communicate that you oppose the motion, and then where do you stand now? Are you opposing their request that we wait just to be sure we don't mess it up? I did not file a written response to the motion to stay. It was simply just the certificate of conference. Here today. Here today. I don't see ... I have a constellation of concerns. He is in jail for life, and they heard this case in 23, December of 23, Floyd was heard almost a year ago. Yeah, the discretionary ... So does the government presently, given my anxieties that I've been very candid to describe, do you suggest that we shouldn't wait for Floyd, we should apply Garrett? I do not think the court should wait for Floyd, and there are a couple of reasons why. First of all, he has a consecutive life sentence. Mr. Rose isn't going anywhere, and I guess it might cut both ways, but this case has been pending for eight years, and it's had multiple stays for additional successive authorizations, and we waited on Borden, and there is a need for finality in these cases, and the result for Mr. Rose isn't the same regardless. He's still ... I understand. Yeah. It cuts both ways. I appreciate that. What's the next reason? Simply that, as Judge Elrod pointed out, the court has a rule of worryliness, and it processes its cases based on its current case law until there's a reason to change it. There are actually four alternative bases to affirm here, and while this case does raise interesting jurisdictional and procedural issues, at the end of the day, as we've already discussed, the court's binding precedent, current binding precedent, demonstrates that Rose continues to have a valid ACCA sentence. Can you tell us what the four alternative ways to affirm are, please? The first one is that the court could affirm the district court's jurisdictional dismissal. The second is that the court can find jurisdiction and rely on its binding precedent and Lerma and Garrett to find that the aggravated robbery by threat continues to be a violent felony under the ACCA. Third, the court should decline to address the aggravated sexual assault because it was not an authorized predicate, and the court does not have jurisdiction to consider it. And then fourth, if the court were to consider the aggravated sexual assault, again, as I said, Rose continues to have three valid ACCA predicates under current law. Okay. But declining to address the aggravated sexual assault, that in itself is that, that doesn't just, that doesn't affirm the whole case, does it? It, well, if the court finds that it, well, first of all, under Hanner, the court doesn't have jurisdiction to consider it because it was not an authorized predicate. The only thing he asked for is aggravated robbery by threat. But yes, it does determine the outcome. It what? If we don't, if you don't consider that. If we don't consider the aggravated sexual assault. Whether you don't or you do, he still has three valid ACCA predicates. That's your first and second argument? That's my, yes, no, second and fourth. I don't, you know, it seems like that's the same argument all the time, that there are three others. It seems to be that you're saying there are three others in a variety of ways. Yes. Basically, that's what, that is what I'm saying. Okay. So that's not, okay, that's, thank you. Turning first to the jurisdictional issue, the first jurisdictional issue, I guess I should say, and although the district court didn't explain its jurisdictional dismissal, the court can still affirm here. The court still has an obligation to consider jurisdiction in the first place. And the burden here is on Rose, and it is by preponderance of the evidence, it can't be, you know, equally as likely or maybe as likely. And when Rose was sentenced in 2008, in the years before that, the court had held that the use of a deadly weapon in various different types of crimes constituted the threatened use of force. And that is the thing that distinguishes this case and this predicate from Davis. That's one of the things. So in Davis, it was simple robbery by threat. Here, we have an aggravated robbery by threat with an aggravated, with a deadly weapon, I'm sorry. And how does that affect the jurisdiction? I'm sorry, can you finish the thought out? Sure. So at the time of sentencing, the court had held that the use or exhibition of a deadly weapon constituted the threatened use of force. Right, you said that. And what is, how does that mean that we don't have jurisdiction? That means that the sentencing court could very well have thought a robbery by threat is a force clause offense. Okay, and then why does that mean we don't have jurisdiction? You gotta, can you finish the thought out? How does that affect our, the fact that that was a valid, perhaps a valid way of looking at it at the time, how does that affect our jurisdiction in this particular matter? It is that the sentencing court could very well have considered it to be a force clause offense, and that's where the focus is on this jurisdictional question. What is the jurisdictional, if the sentencing court could have considered that, how does that mean that we don't have jurisdiction? It's because the burden is more likely than not. The burden to what? The burden to establish that the sentencing court relied on the residual clause in 2008 when it's sentenced. Okay. You're saying force was there throughout. Yes. But it would mean we lack jurisdiction for all these intervening years. No, because. Because you're saying, you didn't cite a case that I saw, it was this notion of a background legal environment. Yes. What case is ever dismissed on that theory? The considerations in Weiss and Clay are the sentencing record itself and the background legal environment. I know. I'm asking when is the court actually said, well, there's a background legal environment, therefore, we can just say it was the weapon and the force. We can, it just, there was no chance it was the. There's no case that I found in this particular context. So in dealing. You haven't made that argument in all the intervening years. So there's no case and you've never made the argument. Correct. And I'm not, yeah, and I'm still not sure what does that, how does that argument mean we don't have jurisdiction? You have to say we only have jurisdiction if X and we are not X. So I need to know why this determines our jurisdiction. I'm still not, you've given me the, what the answer would be, but I don't understand why it's, what's jurisdictional about that answer. It's the combination of the burden of proof thing on Mr. Rose and the fact. What is the question we were asking in determining whether we have jurisdiction of this proceeding? Did the district court at sentencing rely on the residual clause? More likely than not. If the Senate, why would that mean that we don't have jurisdiction rather than it was just right or wrong? Why is that a jurisdictional question? Jurisdictional for what? Of successive? Yes. Well, you need to explain that. Can you explain that it's successive and we only have it if it hasn't been considered already and, can you please explain why this is jurisdictional rather than just a merits based thing of whether he had a weapon or not? The second gatekeeping requirement of the successive motion is that the petitioner has to prove to the district court by a preponderance of the evidence that the sentencing court relied on the residual clause and relied on the case that is involved here, which is Johnson. In order to be here on a successive? Yes. In order to have been? In order for the district court and for this court to have jurisdiction. And that is the showing that Mr. Rose is required to make. And all our colleagues that sort of had contributed or tried to help solve this torturous history, not your fault, not theirs, it's we've got Johnson, then eventually we lurched to Welch. Everyone so far has said there's jurisdiction to get the answer correctly, yet to answer the issue correctly or not. So it's, right, it's back to my point. You're asking us many years later to find a lack of jurisdiction when that's never been seen by anyone else before. But that's the court's case law in Weiss and Clay. I'm asking what's your best supporting case law that we can pretermit the Johnson-Welch issue because we don't even have jurisdiction to consider. It's Weiss and Clay. It's what? It's Weiss and Clay. It's those cases where the court has said, here's what the standard is. I know, but when has any court ever applied that standard to dismiss the case as lacking federal court jurisdiction to even look at? It applied in Hernandez, which is an unpublished case that's cited in my brief. I don't recall off the top of my head what the predicate was that was involved there. Specifically, we would hold what to dismiss this case? Say it all the way out. Don't use shorthand or some kind of . . . well, of course, we all know successive. We do do a lot of successive, but can you say exactly what we would have to hold and what case we would rely on for you to win straight up with no jurisdiction? Under the legal standards set forth in Weiss, Clay, and Rodriguez, Mr. Rose has failed to demonstrate by a preponderance of the evidence that the sentencing court in 2008 relied on the residual clause when it decided that his aggravated robbery by threat conviction qualified under the ACCA. Okay. Do you want to comment on the Erlinger issue? Is that present in this case? No, it is not. Erlinger has not been found to be retroactive to successive motions. There's been no request for authorization to deal with the Erlinger issue. That would be sort of a separate set of motions if it were determined it was retroactive to cases on collateral review and in the successive context. I would also point out that looking at the dates of his offenses, I don't even think that would be a plausible argument in particular. His 1985 burglary was committed on January 30th of 1985. His aggravated robbery by threat was committed on January 9th, 1985. And the simple robbery was committed on December 12th, 1983. Almost no connection whatsoever. Right. The closest we have there is January 9th to January 30th. But that's still three weeks, essentially. There's not even really a factual issue there that Erlinger would be involved in. Thanks. I'm going to go now to the second path, which is the one we've probably discussed the most. The court could do as it did in the unpublished case, United States v. Senegal, and find the jurisdiction. There, the court relied on the Davis case to say it was more likely than not that the court relied on the residual clause instead of the force clause. And then, based on Garrett and Lerma, affirm and say that the aggravated robbery by threat is a valid act of predicate and continues to be. As to the aggravated sexual assault, the government agrees that it no longer qualifies because the without consent element does sometimes involve—that does not involve the use of force. But the court doesn't have jurisdiction to consider it. This is very similar to the Hanner case, where Mr. Hanner asked for authorization to challenge two of his three predicates, and the district court attempted to challenge the third one, and this court said there's no jurisdiction for that because it was not an authorized predicate. Do we have to deal with that at all? Even regardless of whether you win or lose, do we have to deal with that? I don't believe that you do. Can we put that to one side? Because everybody agrees it doesn't qualify, and whether we have jurisdiction over that, we're not even going to consider that claim, and that's good for you. That doesn't hurt you because you realize the merits it loses. So why are we even addressing that one under Hammer or anything else? We don't necessarily have to. I mean, that brings us to the fourth and final way the court can affirm, and that is using that additional predicate, and he continues to have three valid AGA predicates. And even though that wasn't initially raised, Mr. Rose was certainly aware of it. It was talked about at trial. The conviction documents were actually introduced into evidence at trial. The only reason they don't exist in our current record is because in 2008 or 2009, exhibits weren't included in the electronic record, which is why I had to supplement the record to add it. Actually, it was Mr. Rose that first raised it in district court by listing it in the Statement of Facts. So there's nothing unfair about affirming Mr. Rose's sentence. I mean, he has many prior convictions, and at least three of them continue to be AGA predicates under this court's binding case law. And can I ask a quick question about the motion to abate the briefing schedule pending Floyd? Did you weigh in on that motion? I don't recall that. You filed a motion to abate the briefing schedule a long time ago before a motions panel. Did the government weigh in on that? I'm sure I would have because there would have been a certificate of conference, but I did not specifically file a written response to the motion to stay or the motion . . . And that motion was denied. Yes. But, you know, that doesn't mean necessarily that we have to do the same thing in the fact that we didn't abate the briefing schedule, whether we abate now or stay now. Right. Right. Absolutely. The court can still decide to hold this case for Floyd if it wanted to. Okay. And for all the reasons that I've argued, the government asked the court to  Thank you. Do we have your argument? Unless the court has a question, I'll start back with the jurisdiction that counsel just addressed. Indeed, in Joyner and Senegal, this court found jurisdiction based on Sante Esteban and Davis that, in fact, in or about the 2008 time period, when looking at Texas robbery predicates, the sentencing courts would rely on the residual clause. I would suggest not only more likely than not, but the fact that there's no force clause analysis below, it would certainly have been the case that the court would have used the residual clause. To address another point that was raised by counsel, the weapon issue here is absolutely a red herring. There have been plenty of cases talking about whether weapons imply or implicitly show a use of force, but that was not the question here. In the Davis decision, the court said there is no meaningful distinction between armed and unarmed robbery, and that's explained in Sante Esteban Hernandez, which points out that when we're looking at the statutes, the Texas robbery statute focus is on the realization of injury, not on the acts of force that articulate that injury. It seems like a lot of mental gymnastics, I understand, but there was a lot of debate back then. In this case, the sentencing court had cases on point to apply the residual clause. I would also add that on direct appeal, defense counsel made a substantial residual clause argument about the same predicates, albeit with respect to the three strikes count, and this court affirmed based on the residual clause and Davis. Again, I do think we clearly meet the jurisdictional bar in this case. With respect to the merits, I just would again emphasize that I think that it is not quite as simple as it may look. It certainly was not a Senegal case. Here, we have multiple predicates. In Senegal, there was one robbery that was at issue. The court, if it is remanded, the district court will have to consider the aggravated sexual assault because the authorization was based on the use of the residual clause. When we go back on the merits, the court has to look at everything under the law as it stands now. It is not really an issue of forfeiture jurisdiction with respect to the aggravated sexual assault. As Your Honor pointed out, that is probably not necessary. We are contingent on the Floyd decision, and I respect the court's need to bring the case to closure, but do submit that it would be in everyone's best interest if we waited and the law was consistent. Do we know anything about how long it is going to take? Unfortunately, I don't. Thank you. I wish I did. Thank you so much. Thank you. We have your arguments. We appreciate both the arguments. This case is submitted.